# CHARLES I. ALEXANDER v. BENJAMIN F. WARD.[1]

## July 10, 1914.

## Nos. 18,631—(167).

**Conversion — breach of contract.**

> Findings of fact considered and *held* to sustain the conclusions of law that defendant converted to his own use moneys of plaintiff; that a certain contract between the parties should be cancelled, and that plaintiff was not guilty of a breach thereof which entitled defendant to damages.

Action in the district court for Hennepin county to recover $4,100 alleged to have been converted by defendant, and for an injunction. The case was tried before Hale, J., who made findings and ordered judgment in favor of plaintiff for $3,900. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*George H. Selover,* for appellant.

*McDonald & Patterson* and *Maclean, Hollinrake & Moxon,* for respondent.

BUNN, J.

The issues in this case were tried by the court below without a jury. There were findings of fact and conclusions of law in favor of plaintiff, and judgment was entered thereon. Defendant Benjamin F. Ward appeals from this judgment.

The claim is that the findings of fact do not support the conclusions of law. The action was for the alleged conversion by defendant Benjamin F. Ward of the sum of $3,900, and the further sum of $500, alleged to belong to plaintiff; the wife of said defendant was made a party, the claim being that the moneys converted were invested in the name of the wife for the purpose of defrauding plaintiff; the relief asked was a money judgment against defendant

[1] Reported in 148 N. W. 123.

Benjamin F. Ward for the sums converted, less $300 paid, and an. injunction restraining defendants and each of them from disposing of the money or the property in which it had been invested. The answer, as amended, denied generally the allegations of the complaint, alleged the making of the contract hereinafter noted, the making of sales thereunder by defendant and the receipt by him of partial payments on such sales; these payments being the moneys alleged in the complaint to have been converted by defendant. The answer alleged that up to July 10, 1911, defendant had performed and was ready, able and willing to perform the contract, but that on said date plaintiff gave and defendant received a notice in writing: terminating the same; that by giving this notice plaintiff did wholly "repudiate, breach and terminate" the contract and prevented defendant from further carrying out the same, and "defendant has and does hereby elect to treat the said contract, Exhibit 'A,' as terminated and at an end because of and by reason of the said breach and repudiation thereof on the part of the said plaintiff." The answer concluded by demanding judgment that plaintiff take nothing and that defendant have judgment against plaintiff for the damages sustained from plaintiff's alleged breach of the contract in serving the notice of cancelation. The reply admitted the making of the contract, the receipt by defendant of payments on sales made under it, and that the moneys so received were the same moneys claimed by. plaintiff to have been converted by defendant. It admitted that plaintiff gave notice of cancelation of the contract, and that such contract had been terminated by mutual consent of the parties. The other allegations of the answer were denied.

The findings made on the issues thus presented by the pleadings were in substance as follows: Plaintiff owned lands in Saskatoon Province, Canada. April 15, 1911, plaintiff, as party of the first part, entered into a written contract with defendant Benjamin F. Ward as party of the second part and one Elliott, as party of the third part, by the terms of which contract plaintiff agreed to sell the lands to defendant Ward for the sum of $38,000, of which $8,000 was to be cash, the balance to be paid in five equal annual instalments of $6,000 each with interest, the first instalment payable.

November 1, 1911. The $8,000 cash was to be paid by the transfer to plaintiff of stock in a corporation, and it was provided that when this stock was received plaintiff was to transfer one-third thereof to Ward and one-third to Elliott. These provisions followed:

"It is further understood and agreed that it is a term of this agreement that the party of the second part shall sell the said lands, and the proceeds of the said sale shall be applied, firstly, in payment to the said party of the first part of the balance of purchase price, and, secondly, any residue, after payment of the purchase price, shall be divided equally amongst the three parties hereto."

"It is further agreed and understood that the party of the second part is to have full control of the sale of the said lands both as to price, terms and time of sale. And the party of the first part is to retain possession of all buildings now on said lands."

"It is further understood and agreed that all the covenants, terms and provisions contained in the agreement for sale hereto attached which are not inconsistent with the provisions of this agreement shall be construed as though embodied in and forming a part of this agreement."

The agreement attached was a blank form of contract evidently intended to be used in the sales that defendant was to make. We find nothing in its provisions that changes the rights of the parties under the contract, except the provision giving the vendor a right to terminate the contract for default of the purchaser in performance of any of the "stipulations, covenants, provisos and agreements" of the contract.

After the making of this contract, defendant Benjamin F. Ward sold under land contract (using the form before mentioned) certain of the lands for a gross sale price of $36,000, the cash payment being $3,600, which was received by Ward. This contract was signed by Ward, by plaintiff and by the purchaser. Ward sold to another purchaser a certain tract for the price of $6,000, and received $300 in cash and the note of the purchaser payable to himself for $325, as the "down payment." This contract was signed by Ward and the purchaser but not by plaintiff, who had no knowledge of the sale until after Ward left Saskatoon. After receiving the $3,600 pay-

ment, the $300 payment and the note, Ward discounted the note, transferred all of the moneys thus received from Saskatoon to Minneapolis and deposited them to his own credit in a Minneapolis bank, by which the court found that he converted all said sums. On June 17, 1911, plaintiff demanded of Ward the moneys so received by him on said sales, but Ward refused to pay over any part thereof, and has converted the same to his own use and benefit.

The gross amount of sales made by Ward under the contract was $46,225; these sales covered only a portion of the lands, the portions unsold being of the value on July 5, 1911, of the sum of $46,725, the whole property covered by the contract being worth $93,000.

The court found as a fact, though it is really a conclusion of law, that under the provision of the contract the proceeds of sale of the lands by Ward should be applied, firstly, in payment to plaintiff of the balance of the purchase price, plaintiff was entitled to have and receive all of the payments made by purchasers until the full purchase price of $38,000 was received.

The court further found that, by converting the sums so received from the purchasers, defendant forfeited his rights under his contract with plaintiff; that on July 8, 1911, plaintiff served notice on defendant of the cancelation of the contract, and that by this notice all rights of defendant Benjamin F. Ward under the contract were cancelled and annulled.

The conclusions of law were that plaintiff was entitled to judgment against defendant Benjamin F. Ward for the sum of $3,900 with interest, and that the contract be adjudged cancelled and annulled.

The contentions of plaintiff, sustained by the trial court are: (1) That he was entitled to have paid to him the sums collected by defendant on the sales made by him, and that the failure of defendant to pay these sums on demand was a conversion; (2) that by this failure to pay defendant breached the contract, giving plaintiff a right to cancel it, which he exercised, thus terminating the contract and all rights of defendant thereunder. The contentions of defendant are in brief: (1) That there was no conversion of the moneys received by defendant on the sales made by him; (2) that the notice

of termination of the contract given by plaintiff was a breach thereof which entitled defendant to recover damages by way of counterclaim.

1. If, under the terms of the contract, plaintiff was entitled to receive from defendant on demand the payments on sales made by defendant, it was clearly a conversion, as well as a breach of the contract, for defendant to refuse to turn over this money upon the demand being made. It does not seem material whether we call the contract between plaintiff, defendant and Elliott a contract for the sale of lands, or whether we call it a contract creating a partnership between the three parties. At least this is not important on the question of conversion. It clearly was contemplated that the proceeds of sales made by defendant should be applied, firstly, to the payment to plaintiff of the balance of the purchase price. Though the sales were made before any part of this balance was due, we are of the opinion that plaintiff was entitled, at least on demand, to have defendant pay over any and all moneys received as proceeds of sales made by him, until the purchase price was paid in full. The entire contract must be considered. There was no provision for a deed to defendant at any time, and he seems to have had no interest in the lands or under the contract, save a one-third interest in the profits. There could be no profits until the thirty-eight thousand dollars was paid to plaintiff. It was apparently not contemplated by the parties that defendant should retain the proceeds of sales made by him until payments were due under the contract with plaintiff. When the demand was made defendant was bound, we think, to pay over the money to plaintiff, and the facts found sustain the conclusion that his refusal to do so was a conversion.

2. We have little difficulty in sustaining the conclusion of law that the contract be adjudged cancelled and annulled. In view of the election of defendant in his answer to treat the contract as "terminated and at an end," it was proper for the court to so adjudge. This does not, however, settle defendant's claim of damages for the alleged breach of contract by plaintiff in giving the notice of cancelation. We do not regard as material, in view of the pleadings, questions as to the form of or defects in the notice of cancelation. The

notice was admittedly received by defendant, and he elected to treat the contract as terminated, and to rely on his claim that plaintiff breached the contract.

3. The question, therefore, is whether plaintiff had a right to terminate the contract without being liable in damages for a breach in so doing. If defendant was not guilty of any breach when the notice was given, his claim that plaintiff was guilty of a breach in declaring the contract terminated, and that this entitled him to damages, could be sustained. But if defendant was guilty of a breach of the contract when he refused to pay over on demand the proceeds of sales, after removing the money from Canada and depositing it in his own name in Minneapolis, plaintiff was entitled to cancel the contract. We hold that this conduct by defendant was a breach of his contract, and that plaintiff, on account of this breach, had a right to terminate the contract without subjecting himself to liability for so doing. We see no inconsistency in plaintiff's recovering his money, and at the same time declaring the contract at an end. The result is to put the parties in the position they were in when the contract was entered into. Plaintiff gets nothing that he did not then have, and defendant loses nothing except the profits he might have realized had the contract been carried out. This loss is his own fault. We see no merit in the claim that by bringing this action plaintiff elected to stand on the contract and waived his right to terminate it for defendant's default. The action is not to recover an instalment of the purchase price, but is for conversion by defendant of moneys that belonged to plaintiff whether the contract was in force or not. If we consider as embodied in the contract the provisions of the blank form attached thereto, the right of plaintiff to cancel for the default of defendant is equally clear. As stated before, we regard all questions as to the form of the notice and its service as eliminated by the pleadings.

Our conclusion is that the conclusions of law are in all respects justified by the findings of fact.

Judgment affirmed.